**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

_____
                                      )
**DAISY RAMOS**,                      )
                                      )
       **Plaintiff**,                )
                                      )
       v.                            )    **Civil Action No. 2010-119**
                                      )
**SYLVESTER MCINTOSH, TURNER ST.**    )
**CROIX MAINTENANCE, HOVENSA, LLC.,** )
**UNITED STEELWORKERS OF AMERICA**    )
**and LOCAL CHAPTER 8248,**           )
                                      )
       **Defendants**.              )
_____)

**Attorneys:**
**Rachel E. Morrison, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Charles E. Lockwood, Esq.,**
**George H. Logan, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Turner St. Croix Maintenance, Inc.*

**Michael J. Sanford, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant United Steelworkers of America and Local Chapter 8248*

**Sunshine S. Benoit, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant HOVENSA, L.L.C.*

**<u>MEMORANDUM OPINION</u>**

**Lewis, Chief Judge**

       THIS MATTER is before the Court on Defendant Turner St. Croix Maintenance's ("TSCM") "Renewed Motion to Stay Pending Arbitration" ("Renewed Motion"), (Dkt. No. 13),

which Defendants United Steelworkers of America and Local Chapter 8248 (collectively, the "Union") have joined, (Dkt. Nos. 19, 23). The Court will grant in part and deny in part the Renewed Motion. The Renewed Motion will be granted as to the employment and tort claims against TSCM which are subject to mandatory arbitration. In addition, the Court is now satisfied that Plaintiff initiated arbitration proceedings as to her claims against the Union, thus waiving her right to a judicial forum for those claims. As to the claims against TSCM not subject to mandatory arbitration and for which the Court has found no waiver, the Renewed Motion will be denied.

## I.   BACKGROUND

Plaintiff Daisy Ramos initially brought this action in the Superior Court of the Virgin Islands. Defendants then removed the case to this Court. (Dkt. Nos. 1, 5, 7).

Plaintiff alleges that she was employed by TSCM and worked on site at the HOVENSA, L.L.C. ("HOVENSA") refinery in an environmental capacity and under a Collective Bargaining Agreement ("CBA") between TSCM and the Union. According to the Complaint, another TSCM employee, Sylvester McIntosh, committed an assault and battery against Plaintiff for which HOVENSA and TSCM are vicariously liable. Plaintiff claims that she was subjected to ongoing threats and verbal harassment, and was thus constructively discharged due to the hostility of the work environment. She also alleges that TSCM breached Articles 28 and 29 of the CBA by failing to protect her from McIntosh; by preventing her from collecting workers' compensation; and by suspending her without pay. Plaintiff further alleges that the Union breached its duty of fair representation, and that all defendants intentionally and/or negligently inflicted emotional distress upon her. (Dkt. No. 1, Ex. 1).

TSCM's first Motion to Stay Pending Arbitration (Dkt. No. 10) was denied by the Court

without prejudice for lack of sufficient evidence regarding the basis for, and initiation of, arbitration proceedings (Dkt. No. 12).  TSCM renewed the Motion with greater evidentiary support (Dkt. Nos. 13, 21), and Plaintiff has opposed the Renewed Motion (Dkt. No. 17).  Defendant Union moved to join TSCM's Renewed Motion, and this Court granted the Union's request for joinder. (Dkt. Nos. 19, 23).  The Renewed Motion is now before the Court.

## II.   DISCUSSION

The Federal Arbitration Act ("FAA") strongly favors resolution of disputes through arbitration, as a matter of federal policy.  *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 111 S. Ct. 1647, 1651 (1991).   When a claim is referable to arbitration, proceedings are to be stayed in district court, upon a party's motion, in order to avoid unnecessary duplication of adjudicatory effort and draining of resources.   9 U.S.C. § 3; s*ee also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).  A claim is referable if the parties contracted to resolve the issue through arbitration.  *See Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010).

Here, the mandatory arbitration provisions in the Employment Agreement ("Agreement") between TSCM and Plaintiff govern some of Plaintiff's claims against TSCM.  Plaintiff's CBA claims against TSCM and her claims against the Union, however, are not covered by the mandatory arbitration provisions.  Accordingly, disposition of the Renewed Motion requires distinct analyses for claims governed by the mandatory arbitration provisions of the Agreement and those not so governed. The Court takes each in turn.

### A.  Claims Governed by the Mandatory Arbitration Provisions

The Agreement governing Plaintiff's employment with TSCM distinguishes between claims that arise under an applicable CBA and those that do not.  The Agreement has multiple arbitration provisions which state that claims relating to Plaintiff's employment with TSCM must

be arbitrated, while arbitration is not required for claims arising under the CBA. (Dkt. No. 10, Ex. A).

Here, there is no challenge to the validity of the arbitration provisions, and this Court, in previous Orders, affirmed the Agreement's distinction between CBA-based claims and non-CBA claims. (Dkt. Nos. 12, 25). Plaintiff's employment-related and tort claims against TSCM—namely, her assault & battery, constructive discharge, and intentional infliction of emotional distress claims—fall into the non-CBA category under the Agreement, and are thus referable to arbitration.[1] Accordingly, proceedings on those claims will be stayed in this Court, and they will be referred to arbitration in accordance with the Agreement's mandatory arbitration provisions.

### B.  Claims Not Governed by the Mandatory Arbitration Provisions

Other claims asserted by Plaintiff are not subject to mandatory arbitration. The Employment Agreement provides that claims or disputes against TSCM arising under a CBA are not subject to arbitration. Some of Plaintiff's claims falls into this category—TSCM's alleged breach of the CBA based on gender discrimination, the denial of workers' compensation, and disciplinary violations. Similarly, claims against the Union—breach of the duty of fair representation, constructive discharge, and infliction of emotional distress—are not subject to the mandatory arbitration provisions because the Union is not a signatory of, or party to, the Agreement. Although the aforementioned claims are not subject to mandatory arbitration under the Agreement, if Plaintiff initiated arbitration to resolve those claims, she has waived the right to have them heard in court. *See Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355,

---

[1] The Agreement specifies that "all claims Employee may have [against Employer]. . . arising out of or in any way relating to [Plaintiff's employment] . . . shall be resolved solely and exclusively by arbitration." (Dkt. No. 14, Ex. A, p. 2-3). The arbitration provisions of the Agreement list the matters which are to be arbitrated—specifically, claims arising out of "tort law, including . . . personal injury of any nature . . . and intentional infliction of emotional distress," and "any law . . . making any employment action unlawful." (Dkt. No. 14, Ex. A, p. 3-4). The claims asserted against TSCM, except for the CBA claims, fall squarely within these categories.

4

1356-57 (9th Cir. 1983) (per curiam).

In its prior Order, the Court noted that the moving parties would have to show both that Plaintiff initiated arbitration, and that the arbitration Demand sought to resolve the same claims as the instant Complaint in order to succeed on their Renewed Motion. (Dkt. No. 12) (citing *Kanbar v. O'Melveny & Myers*, 849 F. Supp. 2d 902, 913 (N.D. Cal. 2011)). Accordingly, the Court will address each of these issues in turn.

### i. Initiation of Arbitration

By initiating arbitration to resolve a dispute, a litigant waives the right to a judicial forum and "relinquishes courtroom rights." *Teamsters Local Union No. 764 v. J.H. Merritt & Co.,* 770 F.2d 40, 42 (3d Cir. 1985) (quoting *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1977)). Indeed, it is well established that "once the parties have referred the matter to an arbitrator [they] may not later challenge his authority to resolve the dispute." *Johnson v. United Food & Commercial Workers, Int'l Union Local No. 23*, 828 F.2d 961, 965 (3d Cir. 1987) (*citing Jones Dairy Farm v. Local No. P-1236,* 760 F.2d 173, 175 (7th Cir. 1985); *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120,* 647 F.2d 372, 382 (3d Cir. 1981)).

An American Arbitration Association ("AAA") arbitration is initiated where a party files notice of the Demand to arbitrate, provides the other party with a copy, and pays the filing fee. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1122 (9th Cir. 2008) (plaintiff initiated arbitration when he took these steps, pursuant to the AAA's rules); *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, Civ. No 06-715, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) (substantial compliance with initiation requirements of arbitrating organization constitutes initiation).[2]

---

[2] The AAA's Demand form states: "To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee to the AAA [address omitted]. Send the original Demand to the Respondent."

In its previous Order, the Court applied this principle, stating that, if Plaintiff initiated arbitration proceedings to resolve the claims in her Complaint not governed by the mandatory arbitration provisions of the Agreement, she waived the right to have them heard in a judicial forum. (Dkt. No. 12). This principle would apply to the claims that arise under the CBA, and the claims against the Union. *Id.* The evidentiary support accompanying TSCM's first Motion to Stay did not sufficiently show that Plaintiff initiated arbitration for those claims. *Id.* TSCM's Renewed Motion, now before the Court, seeks to remedy this deficiency by demonstrating Plaintiff's initiation of arbitration proceedings.

The parties here submitted the same evidentiary support for their opposing contentions—namely, the Demand for Arbitration ("Demand"), the statement of facts supporting the Demand, and the email correspondence between Plaintiff's counsel and the AAA. (Dkt. No. 13, Exs. B2-B8, Dkt. No. 17, Exs. 1-4). The documentary evidence indicates that, on September 30, 2010, Plaintiff's counsel transmitted, by facsimile, a "Demand for Arbitration and Complaint," and certified that she served Respondents with the Demand. (Dkt. No. 13, Exs. B2, B3).[3] Plaintiff's counsel also indicated that the filing fee for the Demand was paid. (Dkt. No. 13, Ex. B3). The AAA confirmed receipt of the Demand on October 2, 2010, assigning file number 32 460 0067-10. (Dkt. No. 13, Ex. B5).

On October 5, 2010, Plaintiff filed suit in the Superior Court of the Virgin Islands, naming all Defendants. (Dkt. No. 1). The same day, an AAA representative contacted Plaintiff's counsel regarding the need to submit the Arbitration Agreement and contact

---

(Dkt. No. 13, Ex. B3).

[3] In the Demand, Plaintiff names Respondents by reference, writing "See attached complaint." (Dkt. No. 13, Ex. B3). The attached complaint names McIntosh, HOVENSA, TSCM, and the Union as Defendants. (Dkt. No. 13, Ex. B4). Accordingly, the Respondents to the arbitration Demand are the same parties as Defendants in the instant lawsuit.

information for Respondents. (Dkt. No. 13, Ex. B5). Plaintiff's counsel forwarded the Employment Agreement (which contained the arbitration provisions), informed the AAA that HOVENSA and TSCM were served, and directed the AAA to the internet for addresses. (Dkt. No. 13, Ex. B7). The AAA closed the file on October 18, 2010 because full contact information had not been provided. (Dkt. No. 13, Ex. B6). Defendant Union removed the case filed in Superior Court to this Court in December 2010. (Dkt. No. 1).

It is apparent that Plaintiff's Demand for arbitration was the precursor to her Court action. The Demand preceded the lawsuit that was filed in Superior Court and removed to this Court. The factual statement submitted with the Demand named the same defendants as in the instant suit; contained many of the same allegations against them; and sought the same relief as requested in this matter. (Dkt. Nos. 1, 17). In accordance with the instructions to begin arbitration proceedings set forth on the AAA Demand form, Plaintiff submitted the Demand and the fee to the AAA on September 30, 2010, and certified that she served Respondents with the Demand.[4] The Arbitration Agreement followed by email dated October 5, 2010. Because Plaintiff filed the Demand with an attached complaint against the same parties named in the instant lawsuit, paid the arbitration fee, provided the Agreement with the arbitration provisions, and served the Respondents, the Court finds that Plaintiff initiated arbitration as to the claims included in her arbitration Demand. *See Cox*, 533 F.3d at 1122; *Beauperthuy*, 2011 WL 6014438 at \*5.

In her Opposition, Plaintiff raises two challenges to the scope of the arbitration she

---

[4] On the facsimile cover sheet for Plaintiff's arbitration Demand, counsel "certif[ied] that on September 30, 2010, the attached documents [were] being served by fax/email and/or hand delivery to Respondents." (Dkt. No. 13, Ex. B2). The Respondents named in the attached Demand are HOVENSA, TSCM, McIntosh and the Union. See footnote 3, *supra.* In a subsequent email responding to an AAA representative, Plaintiff's counsel represented that she served Respondents HOVENSA and TSCM with the Demand by mail and hand delivery respectively, but did not mention McIntosh or the Union. (Dkt. No. 13, Ex. B7). To the extent that Plaintiff intended to make a different representation as to who was served, no explanation was provided for this change.

7

initiated, both of which are unavailing. First, Plaintiff argues that the Union is not covered by the arbitration provisions in the Agreement, and therefore cannot be included within the scope of the arbitration initiated. (Dkt. No. 17, p. 1). However, the Demand names the Union as a Respondent. (Dkt. No. 13, Exs. B3, B4; footnote 3 *supra*). Further, the complaint filed with the Demand contained claims against all Defendants, including the Union. (Dkt. No. 13, Ex B4).[5] Specifically, Plaintiff alleged that the Union constructively discharged her and breached its duty of fair representation. (Dkt. No. 13, Ex. B4, p.4-5).

Thus, under the circumstances here, Plaintiff's argument fails as a matter of law. The fact that the Union was not a signatory to the Employment Agreement, and thus Plaintiff was not required to arbitrate claims against it, does not mean that arbitration could or would not include the Union where—as here—the Union was named as a Respondent by Plaintiff in her arbitration Demand; the associated complaint contained claims against the Union; and the Union now seeks arbitration rather than resolution in a judicial forum. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 195 (3d Cir. 2001) (citing *Barrowclough v. Kidder, Peabody & Co., Inc.,* 752 F.2d 923 (3d Cir.1985)). Because Plaintiff initiated arbitration to resolve her claims against the Union, the fact that the arbitration provisions of the Agreement did not include the Union does not preclude arbitration of those claims. *See Fortune*, 724 F.2d at 1356-57.

Second, Plaintiff argues that she withdrew the arbitration Demand and thus did not initiate arbitration. Plaintiff claims that the "AAA required counsel for Plaintiff to include Ramos' claims against all parties," and that "Plaintiff was unwilling to do so and counsel withdrew the demand for arbitration." (Dkt. No. 17, p. 2).

---

[5] When requested on the arbitration Demand form to describe "in detail . . . the nature of each claim," Plaintiff responded with the phrase: "See attached Complaint." (Dkt. No. 13, Ex. B3).

This statement is not borne out by the documentation supplied by the parties. As an initial matter, Plaintiff did in fact assert claims against all parties, as discussed above. Moreover, the correspondence indicates that the Demand was not in fact withdrawn, but rather, the case was closed by the AAA with the possibility of reopening pursuant to the AAA Employment Arbitration Rule 4. (Dkt. No. 13, Ex. B6). Rule 4 dictated closing the case because counsel had not supplied complete contact information for the parties after a request to do so. (Dkt. Nos. 13, 17). An affidavit offered by TSCM confirms that Defendant's counsel also received this explanation from the AAA. (Dkt. No. 13, Ex. B1). Plaintiff's contention that she withdrew the Demand for arbitration does not, therefore, change the Court's conclusion that Plaintiff initiated arbitration as to the claims in her arbitration Demand.

### ii. The Factual Allegations in the Arbitration Demand

In its prior Order denying without prejudice TSCM's first Motion to Stay, this Court noted that in order for Plaintiff to have waived the right to have a claim heard in a judicial forum, the Court would also have to be satisfied that the arbitration Demand was made to resolve the same claim as the instant lawsuit. (Dkt. No. 12); *see Zimmer v. CooperNeff Advisors, Inc.,* 523 F.3d 224, 232 (3d Cir. 2008) (identical basis of claims is a factor in determining waiver of an avenue of relief); *see also Cox*, 533 F.3d at 1121 (where plaintiff initially sought arbitration for a dispute, district court properly denied later attempt to contest arbitrability of the same dispute); *Mroczkowski v. FedEx Ground Package Sys., Inc.*, Civ. No. 09-34, 2009 WL 1298434 (D.N.J. May 8, 2009) (plaintiff waived judicial review where he manifested an agreement to arbitrate by voluntarily initiating and participating in the arbitration for same legal and factual claim brought in later judicial proceeding.)

The detailed factual statement attached to the arbitration Demand and the Complaint in

this matter are virtually identical—the language is identical in many instances, and the names, parties, events, disputes and dates all match. (Dkt. No. 1, Ex. A; Dkt. No. 13, Ex. B4). Both factual statements begin with "From approximately March 2007 Ms. Ramos was employed by Turner at Hovensa's Refinery as an 'Environmental Worker,'" and continue with "During her employment, Ms. Ramos was repeatedly subjected to her co-worker, McIntosh's threats and harassment. Ms Ramos' repeated complaints to management and the Union were regularly and routinely ignored." (Dkt. No. 1, Ex. A, p. 2; Dkt. No. 13, Ex. B4, p. 1). Both the Demand and instant Complaint continue to use identical language in detailing the assault on the morning of October 2, 2008, and then specify the same individuals with whom Plaintiff spoke: "Willow" and her Union Representative, Mr. Francis. (Dkt. No. 1, Ex. A, p. 3; Dkt. No. 13, Ex. B4, p. 2). The allegations regarding Defendants' denial of Plaintiff's injury and disputes regarding her grievance and the workers' compensation process also match. (Dkt. No. 1, Ex. A, p. 4-5; Dkt. No. 13, Ex. B4, p. 2-3). In sum, the factual predicates for the claims in the arbitration Demand and the instant Complaint are the same.

Plaintiff's claims against the Union are also virtually the same in the arbitration Demand and the instant Complaint. In the Complaint, Plaintiff alleges that the Union is liable for: constructive discharge based on the hostility of the work environment; breach of the duty of fair representation; and intentional and/or negligent infliction of emotional distress based on its conduct following the alleged assault. (Dkt. No. 1; Ex. A. p. 6-8). The arbitration Demand contains the underlying allegations for, and the specific legal claims of, constructive discharge and breach of the duty of fair representation. Further, although not specifically asserted as a claim for intentional and/or negligent infliction of emotional distress, the arbitration Demand alleges identical conduct by the Union following the assault that serves as the factual basis for

the claim. (Dkt. No. 17, Ex. 4, p. 2-6); see page 10, *supra*.[6] Plaintiff thus initiated arbitration to resolve her claims against the Union, and in so doing waived her right to resolution of those claims in a judicial forum. Accordingly, the claims are referable to arbitration.

The specific legal claims against TSCM, however, are not entirely duplicated in the arbitration Demand. (Dkt. No. 17, Ex. 4, p. 6-7; Dkt. No. 1, Ex. A p. 6-7). The claims against TSCM in the Demand are the alleged tort and employment claims subject to arbitration under the Agreement. The CBA claims against TSCM, however, are *not* in the arbitration Demand. The Complaint sets forth the sections of the CBA that TSCM allegedly breached, while the arbitration Demand does not mention the CBA. (Dkt. No. 1, Ex. A p. 6-7; Dkt. No. 17, Ex. 4). Accordingly, Plaintiff did not initiate arbitration to resolve the CBA claims and thus did not waive her right to have them heard in court.[7]

### iii. Counsel's Authority to Initiate Arbitration

Plaintiff also raises the issue whether counsel's actions here can constitute a waiver of her client's right to be heard in court. An attorney has the authority to "enter into arbitration or similar agreements to move toward resolution of the dispute in a pending case, as it merely refers the action to another tribunal and shapes the procedure by which the case is ultimately resolved, without compromising the cause." *Gov't of V.I. v. 0.459 Acres of Land Consisting of Following: Parcel No. 6A Estate Thomas Kings Quarter & Parcel No. 9A, Estate Thomas, Virgin Islands,* 286 F. Supp. 2d 501, 506 (D.V.I. 2003); s*ee also* 21 Williston on Contracts § 57:40 (4th ed.) (attorney employed to prosecute a case may submit a controversy to arbitration and client

---

[6] In view of the strong policy in favor of arbitration and the goal of avoiding duplicative efforts, s*ee Gilmer*, 111 S. Ct. at 1651; *AT&T Mobility LLC*, 131 S. Ct. at 1748, the Court deems it appropriate under the circumstances here not to rely exclusively on the titles appended to causes of action, but to focus as well on the nature of—and factual support offered for—the underlying allegations in conducting its analysis.

[7] The parties specifically bargained for precisely this outcome by entering into an Employment Agreement in which non-CBA claims are subject to mandatory arbitration and CBA claims are not.

11

consent to do so may be implied). While counsel may not have the authority to accept a settlement on her client's behalf, counsel's initiation of arbitration is imputed to her client as a procedural matter. *Gov't of V.I. v. 0.459 Acres of Land*, 286 F. Supp. 2d at 506.

To argue that counsel's actions cannot constitute waiver, Plaintiff relies on two cases, both of which are distinguishable from the instant dispute. In *Blanton v. Womancare*, the California Supreme Court held that an arbitration agreement signed by counsel would not be binding on a client *where the client specifically instructed the attorney not to sign the arbitration agreement. Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 403 (1985) (emphasis added). Counsel for Plaintiff in *Blanton* went against express instructions and signed a binding contract to arbitrate where none existed. Here, there is no evidence that counsel signed an arbitration agreement or otherwise acted against express instructions from her client. (Dkt. No. 13, Ex. A); (Dkt. No. 17).

In *Hill*, also cited by Plaintiff, the Supreme Court found that attorneys cannot waive certain fundamental rights for clients. *New York v. Hill* 528 U.S. 110, 114 (2000). However, the named rights were constitutional rights set in the criminal context and bear no factual or procedural similarity to the instant case. *Id*.

In sum, Plaintiff's reliance on *Blanton* and *Hill* does not establish that her counsel lacked the authority to initiate arbitration on her behalf.

### III. CONCLUSION

The non-CBA claims against TSCM—namely the assault and battery, constructive discharge, and intentional and/or negligent infliction of emotional distress claims in Counts I, II and V of the Complaint—are governed by the mandatory arbitrations provisions in the parties' Employment Agreement, and thus, are referable to arbitration. By the express terms of the

Employment Agreement—which were not otherwise waived—the claims against TSCM in Count III of the Complaint for an alleged breach of the CBA are not referable to arbitration. The claims against the Union—for constructive discharge, breach of the duty of fair representation, and intentional and/or negligent infliction of emotional distress in Counts II, IV and V of the Complaint—are referable to arbitration because Plaintiff initiated arbitration to resolve them and thus waived her right to have them heard in a judicial forum.

Accordingly, for the foregoing reasons, the Renewed Motion to Stay Pending Arbitration will be granted as to the non-CBA claims against TSCM and the claims against the Union, and denied as to the CBA claims against TSCM. An appropriate Order accompanies this Memorandum Opinion.

Date: March 10, 2014                    _____/s/_____
                                        WILMA A. LEWIS
                                        Chief Judge